The insurers say in that part of the condition of the policy, which has a supposed application to the case before us, "that they will not be liable for any loss occasioned by theexplosion of a steam boiler, or explosions arising from any other cause, unless specially specified in the policy." The loss however, for which indemnity is sought in the present action, was occasioned by fire; such is the statement of the insured in their affidavit, of the magistrate in his certificate, of the witnesses upon the trial, and of the counsel of the defendants, in their motion for a nonsuit; and if there could be a question as to the proximate cause of the injury, it was for the jury, and not for the court to determine. The plaintiffs were, however, nonsuited. The decision was sustained by the superior court, who held that the explosion was the proximate cause of the loss, and that the underwriters were consequently exempt from liability by force of the condition. If the learned court were correct in their premises, there can be no question as to the justice of the conclusion.
I had supposed that no one would contend that loss by fire, and loss by explosion, were equivalent expressions, in themselves considered, whether found in the condition of an insurance policy or elsewhere. Explosion and fire may stand to each other in the relation of cause and effect, but the two things are not identical. Indeed it was not claimed upon the argument that the explosion consumed the goods, but that it threw down stoves standing on the premises, and scattered the coals contained in them, bringing them in contact with the property, which in consequence took fire and was destroyed. Now if the explosion had been a conscious agent of the insured, and had committed the same act; or if a servant through carelessness had overthrown the stoves, and the same consequences in every particular had resulted; the fire in the case supposed would have been the immediate, and the act of the servant the remote cause of the loss; and as the damages resulted immediately from the peril insured against, the insurers would have been held liable. So much has been repeatedly adjudged elsewhere, and the principle *Page 527 
was recognized and affirmed in this court, in Mathews v. TheHoward Ins. Co., (1 Kern. 9.) But the act of the servant, and the explosion of the boiler in this case, stood in the same relation to the loss of the property. Neither was the proximate cause of the damage, but the causa causarum, or remote cause of the loss. If there is a distinction in this respect between the two, it devolves upon those who rely upon it to state that distinction intelligibly. The attempt was made upon the argument; but when analyzed, the explanation amounted to this, that the explosion preceded the fire, and by its force brought coals to the goods, or goods to the coals, so that they took fire and were consumed; that the ultimate result followed the explosion so quickly, that the last must be held to be the immediate or proximate cause of the loss. Thus when pressed for the proximate cause of the loss, they give us the cause of the fire, and we thus come back by a circle to the point of departure. Indeed no argument would convince a man of ordinary understanding that, in the chain of sequences, the fire was not next to the loss, which was the immediate consequent of the fire, or that the explosion was not back of the fire; but as the transition from one to the other was rapid, therefore it is argued that the explosion was next to the loss; or at any rate, may be called proximate, within the condition of this policy. In this way, the order of events, as they occurred, is changed by affirmation, and a verbal unity established, by confounding subjects which are as distinct as steam and fire. But one authority is invoked, and it is said that in 11th. Peters, (213,) the court held that loss by the explosion of gun powder was a loss by fire, as its proximate cause. But in that, and similar cases, the powder when ignited became fire, and other things being equal, the force of the explosion was in proportion to the rapidity of the combustion. If the steam generated in this boiler underwent a similar chemical change, and the explosion was due to the combustion of water in a state of vapor as its cause, the authority is in point. Otherwise, it has no more application to this case than to an explosion occasioned by the freezing of a *Page 528 
liquid. We are not, therefore, constrained by authority to declare that to be legally true which is physically impossible. And it is consolatory to know that the law may be maintained without outraging science.
My conclusion is, that as "loss by fire" in this policy, as we all agree, means a loss, of which fire is the proximate cause, so "loss by the explosion of a steam boiler" should receive the same construction, and include those losses, of which the explosive force is the immediate cause, if we intend to abide by the authority of adjudged cases, or the language of the condition. The insurers so understood this provision. This is apparent from the first clause of this condition, by which they declare, "that they will be liable for losses on property burnt by lightning." Here the distinction is marked by them, between the mechanical force exerted by electricity and ignition, arising from its contact with a combustible substance. Both may concur in producing an injury. A house may be prostrated, and set on fire by the same stroke. But the forces are different; the one is mechanical, the other chemical; and for a loss arising from the latter only, as its immediate cause, are the underwriters liable. So, in the clause in question, the insurers declare that they will not be liable for losses to property occasioned by any explosion; that is, by the forcible expansion of any elastic fluid; which is the definition of explosion. (Web. D.) They in both clauses refer to a mechanical force put forth and resulting in an injury to the property insured. In the first, their exemption is necessarily implied; in the last, it is expressed; and this is the only difference between them.
Let us now suppose that the manufactory of the plaintiffs had been struck by lightning, and burning coals had been scattered by the shock so as to ignite the property insured, the defendants, all admit, would be liable for the loss, as falling directly within their general obligation to indemnify against damages by fire. That case is not distinguishable from the present. And yet what man, not under the control of a committee, would pretend, that in the case supposed, the property was burnt by *Page 529 
lightning. And yet such conclusion is inevitable, by the same reasoning which establishes that the elastic force of steam in shattering the engine in which it was compressed, became the proximate cause of the burning, in the case before us.
There is another proposition, which has its advocates, which assumes that the explosion was the remote cause of the loss, but affirms that it is, notwithstanding, within the condition, because, otherwise, no sensible interpretation can be given to the clause in question. In other words, the clause rendered as it reads would be useless, as it would merely exempt the insurers in terms from an obligation which was never imposed upon them, in any event, by the policy. On this construction the policy and condition would read as follows: The insurers will be liable for all losses of which fire is the immediate cause, and they will not be liable for any loss by fire, of which an explosion is the remote cause. The first answer to this hypothesis is, that such is not the language of the condition, and the interpolation can only be justified on the ground of absolute necessity. 2d. That no such necessity exists; because if the assumption upon which the proposition rests was true, which it is not, it would not authorize a change of phraseology, which is intelligible as it is, although unnecessary. 3d. The principle applied to the third clause, would require amendment also, of the first and second clauses of the same condition for the same reason. The first provision in reference to lightning is useless, because it leaves the liability of the insurers precisely as it would be if stricken from the policy. The second clause as to "riots and civil commotion" is superfluous, because the same provision inhis verbis is found in the body of the policy. As two out of the three provisions of the condition are superfluous, it would not be a serious imputation upon the wisdom of the insurers if the third was in the same category. This was rather to have been anticipated, if there is any thing in the maxim, noscitur asociis. At all events, it does not follow that because two thirds of a condition are unnecessary, that the remainder must provide an immunity which the law would not grant without it. *Page 530 
But there is another answer to this proposition. It is founded on an assumption which is false in fact. So far from the condition as written being useless, it embraces and excepts every loss of which an explosion is the immediate cause, whether caused by fire, or arising from the combustion of the explosive substance, or otherwise. Upon this part of the argument, the case in 11Peters, (supra,) seems to have been overlooked, though strongly pressed upon the question of proximate cause. There it was held, that loss by the explosion of gun powder was within the policy, which was against fire generally. But it was entirely competent for the underwriters in that case, and in all others, to declare that they would not be liable for damages occasioned by the explosive force of the powder. That is what the insurers have done by this condition. So in the case of camphene, and of every other explosive material. The same immunity would be secured to the insurers, if the manufactory of the plaintiff had taken fire, and steam had been generated by the heat, and the boiler had in consequence exploded, working the injury to the building and machinery that is shown by the evidence. But it is unnecessary to multiply examples. It is enough that entire classes of hazards are found which are exempted from the general obligation imposed by the policy, by the terms of this condition as written. It has therefore a practical operation. And the argument based upon its immateriality, weak as it is, is wholly fallacious. And lastly, it is said, that if the word "carelessness" was substituted for "explosion" in this condition, it would point to a remote cause, and that "explosion" may therefore admit of a similar construction. But "carelessness" is a quality attributable to an intelligent agent only; it cannot of itself, it is presumed, directly ignite, or destroy any thing. Explosion, on the contrary, is a physical force, and as such may be the immediate cause of a physical injury.
For the reasons assigned, I think the defendants have by their policy said to the plaintiffs, we will indemnify you against loss or damage by fire, but we will not indemnify against loss *Page 531 
occasioned by the explosion of your steam boiler, whatever may be the cause of that explosion. If your machinery is rent by lightning, or by steam, and fire ensues, what is burnt is our loss; what is destroyed by the explosion is your own. This, as it seems to me, is the spirit of the contract. If, however, there is doubt as to its meaning, it should be remembered that it is the language of the defendants, and is not to be extended in their favor by construction.
The claim of the plaintiffs, supported by evidence, is for a loss for property burnt or damaged by fire, and not for property crushed, mutilated or destroyed by force of an explosion; and I think they are entitled to have their claim submitted to a jury, and that the judge erred in directing a nonsuit. Such is my opinion. Five of my brethren think otherwise, and the judgment will be affirmed. If the majority had agreed in their reasons for the decision, I should have dissented without assigning the grounds for my opinion. But of the two propositions discussed, one or the other of which is essential to the defense, neither has received the sanction of this court. The judgment is sustained by a concurrent vote, founded not merely upon different, but adverse reasons.
ALLEN, J., delivered an opinion to the same effect as the foregoing by Gardiner, C.J.
Judgment affirmed *Page 532